So we'll hear argument now on the second case of the day, United States v. Telles, and Ms. Garfinkel, I believe you have the first appearance. Thank you, your honor. My name is Elizabeth Garfinkel, and I represent David Telles, and I'll just begin. The court in this case misapplied the federal rules as interpreted by the United States Supreme and this court that require a competency hearing when presented with counsel's well-supported requests, as was the case here. This unreasonable denial set the stage for a fundamentally unfair trial of a mentally incompetent defendant whose right to present a mental defect defense through a respected psychiatric expert was arbitrarily denied and whose mental disturbances then continually derailed the proceedings. Counsel, I respect your point, and I reviewed the record very carefully about when the argument about his competency might be made, but I sat on a case called Vugnara with our court a number of years ago involving a defendant before Judge Alsup, who was a, basically, he just studied how to disrupt the whole system. You may have read the case. I have. And I find a number of really troubling similarities. I know there are some satisfies the requirements of 18 U.S.C. 4241 regarding whether he should have been evaluated for competency. Well, the most important issue right off the bat is he had, his counsel had requested the competency hearings. He had moved for it. Right. And submitted substantial evidence in support of it. And from your perspective, what was the substantial evidence that counsel let me just say as a preface, my understanding of Supreme Court law is we look at competency throughout the proceeding from the beginning to the end. And in my perspective, the beginning or prior to the trial and its sentence, you know, your two best cases, the sentence it's seen was the worst, but in the pretrial basis, what besides counsel's claim that competency was necessary was your evidence. Well, first I need to correct, I'm afraid the court's misunderstanding, Your Honor. And that is there's a different standard for when the court is considering a motion for a denied competency hearing. That standard is based on the submissions to the court at that he was representing himself. He never moved for his own competency hearing. It's a completely different inquiry. At that point, you're looking at the court to see, well, whether the court had sort of to a spawn to found him incompetent, but this is different. In this case, we had counsel submitting his own research opinion, explaining what had been going wrong in his breakdown with the client. And then when he submitted a report of an expert in autism, who explained, who did a set performed by these assessments on Mr. Tullis and was able to say how those assessments... Counsel, with respect, putting my trial judge hat on for a moment. You've got a situation where the trial judge was convinced that the expert just had a bunch of conclusory statements, really didn't back anything up. You had a lawyer who made certain statements about what was happening, but he also shortly found that he was lingering. And of course, later on, some experts found the same thing. How do we carve that up? I mean, if the judge right away gets the opinion or takes the opinion that Mr. Tullis is a really good actor and really, really doesn't have any problems, how do we deal with that? Because again, the rules are different with this motion for the competency hearing. They require a hearing under those circumstances where the defense can present witnesses and cross-examine the evidence. And this court has the report. And I cannot see how the report could have been more clearly supported, both for the competency hearing, but especially later for the report submitted for her expert testimony. There's listing all the assessments she established with footnotes to scientific authority explaining the assessments. This is eons beyond... Your position that in the situation we have here, where there was a motion, that the district judge was required to hold a competency hearing. Exactly. And what authority do you cite for that proposition? I have all those. I have the authorities of the reply. If you look at my reply brief, I talk about how the government cited the wrong standard of review. This is the first section in the reply brief. What are a case or two that you would like us to look at? Sure. Let me see if I were the quickest place to direct. It's quite a lot of briefings, so I'm trying to think of the quickest place to direct. Just one or two cases that you can think about at night. These are wonderful cases. Yes. Yes. Let me get to them. So sorry, Your Honor. The... Okay. So Duncan, for example, that's this case. Duncan, 643 F3, 1242. And Dreyer. Those are the two cases that talk about motions and how it's different. And so from your perspective, those two cases, both of which I am familiar with, require the district judge to grant a competency hearing and failure to do so from your perspective is what is it, a structural error? That's a good question, Your Honor. I probably should have briefed that, but I would say it's a structural error. I mean, you also look at Medina, says that the counsels, these cases, Duncan, Medina, Dreyer, and Drope, they all emphasize that counsel's belief and separately in psychiatric opinion, that both of those things are substantial evidence for a hearing. All of the cases, which I cite in my brief, the evidence here was much, much more substantial than the evidence where this court has previously found, where this court has previously found reversal was required. Let's assume, arguendo, that you're right. In this case, what would we do? Send it back to the district court for a retrospective competency hearing? We wouldn't just overturn the case, would we? Well, Your Honor, yes. You would overturn the case because it set the stage for a completely fundamentally unfair trial. And the brief talks about the many other reasons, the briefs, why this trial was unfair, because he was prevented from presenting a mental defect defense. And also to correct an error from before, in terms of the record, Your Honor said that many experts had found malingering, but what had happened was the government psychologist, Dr. Martel, had found malingering. Dr. Kelleher, the forensic psychiatrist, explained why that might have been his impression, but because of his autism, because of his learning disorders, he really was struggling with answering all these questions. And that her level of expertise was more suited to being able to determine that. And at that point, the problem was that the court made the decision for the jury saying, well, I think he's probably malingering, and wound up discrediting Dr. Kelleher based on the government's suggestion that she had committed ethics violations, which was not a basis to exclude her from the criminal proceedings. Counsel, it wasn't just the government's doctor, I think. When he had those episodes during the trial and went in, and they couldn't figure out what was wrong with him, wasn't there some discussion by those doctors that they thought that he, either they said he was malingering, I think some did, some said that their best guess was that he was malingering. Yes, that's an important issue. There, when you look carefully at the record, what happened in that proceedings, which I tried to explain as well as I could in the limited confines of the briefing, was that the judge only would allow them to present Dr. Martel's report. He excluded Dr. Kelleher's report from the inquiry at that point, because he had made this determination. No, he had said that it looked like she might have been unethical. But again, Counsel, he said multiple things, I think, if I remember right. He had multiple basis for one of which was that he didn't participate, was that the defendant didn't participate properly in Dr. Martel's. Correct, which the autism expert had explained was related to his autism and his learning disabilities, and that he had performed in a similar function in her assessments, but she persevered and went through them with these different ways of doing so. And anyway, to clarify, just to get back to the, oh, sorry. Were you talking about Dr. Kelleher's report? Yes, Dr. Kelleher's report. Should I add about that? Yes. It's kind of, it seems like a kind of an unusual report. It seems quite conclusory and stilted. The victims were, I'm just reading a part of it. The victim's report of pregnancy motivated Mr. Telles toward a plan to rescue her from further tribulations in England. She played upon his sympathies and he, the lonely widower with two children, believed her intricate, fallacious accounts. He discovered another distressed female with a troubling past for him to help. That's kind of an unusual report. Are you saying that the district court had no discretion in refusing to consider it? I urge all of your honors to read the entire report carefully because that is one little section from it. But what that was, what she was doing there was, which is part of the 702 reliability requirements, which is to explain the relevancy of her diagnosis to the facts. So she was presenting how the jury might be able to interpret it, but that is completely separate from the 704 thing. The defense counsel was very clear that she wouldn't be testifying as to the facts. She wouldn't be including that in her testimony, but she had to do that to try to explain the relevance. I mean, autism spectrum disorder is, it's not something that's frequently discussed in our cases. But it's not something that's going to be- Do you know of any cases where it's discussed? No, and this is an important case to explain why it should be addressed because it hasn't come up very well in cases. I think people have different expectations of what autism is. And so it was important to have an autism expert who performed all these assessments explain it. Well, let me ask you this. As I understand it from reading the report, and certainly in this case, autism is on a spectrum and people don't stay in the same spot in the spectrum necessarily for even a short period of time. So what I'm struggling with here is it seems like, tell us, certainly prior to the trial, he was in a different situation than he was at the sentencing, for example. And the district judge, whether or not there was a hearing, said, basically, look, this guy is smart enough to get his password going, made all these connections with this young woman in England, and so on and so on. This is no dummy. He's perfectly capable of functioning. He's perfectly capable of helping his counsel. Does that, in effect, take the place of a hearing, or do you have to have a formal hearing on competency? Yes, you have to have a formal hearing on competency when there's substantial evidence is presented of competency. Well, that has to do with the level of the evidence. But I'm saying, you had indicated earlier, if I understood you correctly, that the case of Duncan, Dreyer, and Drobe say that when there's a motion for a hearing, you've got to hold a hearing. I had not understood that before, and my question now is, assuming for a moment that those cases you think say that, if the district judge articulated the reasoning for denying, basically, stopping everything because he found that the client was incompetent, but did give the reasons why he thought he was perfectly capable of moving forward, why isn't that enough? Because conflicting evidence is not enough. If you look at Maxwell's- There's always conflicting evidence. Right. Conflicting evidence does not stop the hearing. That needs to be sussed out at the competency hearing, the conflicting evidence. But in this case, you've got Dr. Gallaher's information, you've got counsel's information, you've got the statements to self-decree by the defendant himself. Who clearly was involved in preparing for trial. There was lots of evidence about that. Isn't that, in effect, an evaluation of his competence? No, Your Honor. He's still entitled to the hearing under the rules. Under 4241 and 4242, he's entitled to have a hearing where he discusses, where he's able to address the witnesses. And I just really wanted to clarify, if I may, because there was a point I didn't get to clarify before Judge Van Dyke had said about the malingering and the other experts. The doctors were not able to question him, were not able to talk to them. They said it was either conversion disorder or malingering. They said maybe it seemed slightly more likely malingering. The psychiatrist who testified at that hearing said, based on Dr. Martel's report, he incorporated Dr. Martel's report. He was not able to incorporate Dr. Gallaher's report, which explained why she believed it wasn't malingering. That's why I thought that was important. I just wanted to stress that. Counsel, I know we're getting to the end, but I want to go to something I think you said at the very beginning. I'm sorry, Judge Smith. I want to, because this is kind of important. As I understand, in addition to your argument that you have to have a hearing if counsel actually requested one. Yes. Are you also, I think you're also saying that, although our case law generally says that we look at the whole record and the judge looks at the whole record for whether or not it was an error in denying a competency hearing. But I think you're saying that when there's a request for hearing by counsel that we don't look at, that you look at what's before the judge. The concern I would have with that, I'm not sure that's right, but can you help address this, what I think is two important concerns. One is, if you assume for a second that you have a whole trial proceedings that at the very end, as happened here, you have like a sentencing, you have something going on during sentencing. If you isolate it to just what happens then, that's not how the trial judge experienced everything. And it seems to me like that could create, you know, if something different happens at trial, but I mean, at sentencing, the judge could end up, if you just look at that, maybe if you say, well, I'm not sure why the judge would have reached this conclusion. But if you look at the record as a whole, it seems like you could end up, we could end up reversing trial court judge's decisions that made sense in light of the trial court judge's experience of the entire case. But... You know, I can clarify that right away. The sentencing issue, that would be different. At that point, you do consider the whole trial because that motion is based on everything that's before the judge. But I'm talking about the original motion. Okay, so let me address that for a second because I was about to go there. So I could see where the argument is, yeah, but the trial court judge didn't have all that. But I think this goes to something Judge Smith said earlier, which is, I admit that like a judge sitting at the beginning of the case doesn't have all the information that the trial court judge had at the end. But if that judge makes a decision and we look at it and we were to say, well, I'm not sure whether at that time the judge's decision, it's either a closed case or maybe the judge would have erred if we look at it at that time. But then we, in retrospect, having the entire record, have the opportunity to look at everything. And we say, wow, you know that... If we reverse based on just myopically looking only at what happened at the beginning, but we were convinced that, yeah, it did show that this person was malingering and being intentionally disrupted when you look at the whole record. Then we have the problem Judge Smith had, which I've mentioned, which is, what do we do then? Do we like send back and require a whole new trial? Because somebody who, at the very beginning, the judges, somebody who would show, who kind of validated the judge's decision, I guess, if the decision was validated, why would we reverse this whole thing? Because, Your Honor, it wasn't validated. No, no, no. Let me ask you just the... I understand you disagree with that it was in this case, but I'm thinking more about what the law should be, right? Like if we don't look at the whole record, even something at the beginning, we have that problem, don't we? We have the problem where we might be forced to overturn a decision that was validated by the entire record and have a whole new trial when it doesn't seem necessary. That's why I'm saying, why wouldn't that be a reason why, even for something that happens at the beginning of proceedings, we should still look at the entire record? I understand your concern, and I'm concerned also that I'm not going to be able to do my rebuttal later, but I really want to stress this, that you don't have to make that finding in this case, because everything about that initial situation, he shows that his autism continuously made him... Please look at the full report of Dr. Kelleher at each stage, because it's very clear and very clearly explains her findings and how his confusion, sorry, how the way he processed things and would he perseverate and how it would just manifest itself. And someone in that situation could potentially get more and more cut off from being able to communicate with people and become more and more arbitrary as what happened here. And I would like to, if I may, the judge, Judge Smith, your honor, had said something about being a spectrum in terms of people changing over the spectrum, but that's not how autism spectrum works. There's lots of different kinds of autism. And Mr. Telles actually tested very high on the scale as quite severe autism. So someone can sure make, do certain kinds of tasks, like buy a ticket and get a passport, but not be able to perceive social cues, not be able to- Are you sure that people don't move along the spectrum? That's not the general understanding of it, but your honor, I'm not an expert on autism. Your honor is not an expert on autism. Dr. Kelleher is, and she's spoken quite a bit on it. And her particular, and this actually is an excellent example, if I may, of how people's assumptions about autism and perhaps the district court had made his own assumptions about autism. Okay, let's do this over your time based upon our question. We'll give you a couple of minutes after we get finished with the government so you can have a chance for rebuttal. But let's now hear from the government. I know I'm going to say this wrong. It's, I say, Asai? Shea, very close, your honor. Shea? Shea, like Shea said. Okay, easy.  Okay, thank you. Yes, your honor. All right. Good morning, your honors. May it please the court. I'm Annie Shea, and I represent the United States in this matter. Every decision that the defendant challenges in this appeal today can be reasonably understood when viewed in light of the unique factual context of this case. This is a case that involves a defendant who was on trial for manipulating and sexually abusing a 14-year-old, and then went on to engage in extreme tactics to manipulate, delay, and disrupt his own trial. Over the course of two years of pretrial litigation, the defendant asked for and received three different sets of counsel, each of whom he eventually refused to meet or cooperate with at times, and directed his family members to do the same. He also refused at times to meet or submit to examinations with mental health experts, whether they were retained by his own counsel at his direction or ordered by the court. He infinged consciousness twice during critical points in his own trial. Despite all of this, the court in this case, the district court, went to great lengths to protect the defendant's rights and to ensure a fair trial. I'll turn first to the competency hearing request. There's been some discussion about the applicable standard of review, and I believe that United States versus Duncan provides the appropriate standard. It adopted a standard that we have seen most traditionally in state habeas cases, but brought it into the criminal appellate context or the federal criminal appeal context. And what Duncan calls it, it calls it a practical standard and attests whether a reasonable judge situated as was the trial judge or the district court in this case should have experienced doubt with respect to the defendant's competence. Now, Duncan emphasized that this is a comprehensive, it requires a comprehensive review of the evidence. So even though technically the standard is not abuse of discretion or a clearly erroneous standard, it does afford some deference to the district court's vantage point, where he can actually see the defendant's, observe the defendant's conduct during and prior to trial. Counsel, let me just interrupt for just one second. As you know, Ms. Garfinkle has made the contention or raised the contention that based on Duncan, Dreyer, and Drope, that when counsel for in this case, Mr. Teller moved for a competency hearing, it was obligatory to hold such a competency hearing. What's your take on that? I would disagree with that characterization of the standard, your honor. I think that's based off of the plain language of both section 4241 and all of these cases. Again, the standard is that upon a defendant's motion or any motion by the government defense or upon a sui sponte motion by the court, if the court finds a reasonable doubt, meaning a genuine doubt, which is based on substantial evidence as to the defendant's competence, then it must grant a hearing. That's what the statute says. And that was my understanding is that the reasonable judge is gonna determine based upon the evidence before him or her, whether a competency hearing is warranted. Is that correct? So in this case, the government's position that that's what the judge did. And you would disagree with Ms. Garfinkel's position that based upon counsel's motion, that there was an obligation regardless of how the judge felt to hold such a hearing. Yes, your honor. Absolutely. And I think the facts in this case very strongly support. The comprehensive review of the facts in this case support a finding that there was no doubt as to defendant's competence. I think what my colleague on the other side is trying to argue is that essentially there are two things here that she says raises a doubt, which were trial defense counsel's own affidavit and then the defense experts report. Now that might be true if those were the only pieces of evidence before the district court here, before this court, but they certainly are not. They're actually overwhelmingly contradicted by everything else. I think of note where the jail calls, there are two years of recorded jail calls between Mr. Telles and his family members, which show his active participation in this case and also his nuance and complex understanding of the legal proceedings before him. I think there's the evidence and the record also shows that Telles was regularly reviewing and drafting legal documents, engaged in plea negotiations, even had his family members contact the prosecutors directly at one point to reopen plea negotiations, which occurred. He made arguments on his own behalf in court that evidence a rational and factual understanding of the proceedings and also that he was able to assist and participate in his own defense. Now, I think that defense's argument or appellant's argument now is that Dr. Kelleher's report, because she's technically a psychiatric expert in itself should have raised a reasonable doubt. But I think that, again, the appellant has urged a review of those reports and the government review would urge the same. But those specific reports, if you look at them, are rather conclusory. And the district court found this after reviewing them. They discussed to some extent some general characteristics of individual's autism as applied to Mr. Telles. And they seem to take at face value each of Mr. Telles' statements. And then they jumped to certain conclusions with regard to her competence report, obviously that he was incompetent to stand trial. What the report lacks is essentially really an establishment of the connection between the autism here, assuming that Mr. Telles has it, and how it resulted in his inability to comprehend the nature of the legal proceedings and his ability to assist in his own defense. This court has plenty of cases that has shown that a refusal or voluntary unwillingness to participate in one's own defense is simply not the standard. It's about an inability. And here, Mr. Telles demonstrated again and again that he was in fact capable and quite active in participating in his own defense. I also want to discuss the district court's decision in essentially denying Mr. Telles' further request. I think that this was a, I think that the timing of this particular decision is a significant factor for the court to consider. The standard here, of course, is abuse of discretion. And the defendant raised, for the first time, a motion to represent himself approximately six weeks before trial at a September 4th hearing. He did so to the surprise of his own counsel, which then resulted in, of course, the motions for a competency hearing after this. Now, during the court's colloquy with Mr. Telles, Mr. Telles told the court multiple times that, you know, his first action would be to seek a continuance of the trial date. He explained that the only reason he was asking to defend himself was because he wanted new counsel. And if he wasn't gonna get one, he would rather defend himself. And by this point, the court had already granted 12 exclusions of time under the Speedy Trial Act. This is about two years of new counsel being granted to Telles. And based off of all the facts before it, the district court reasonably found that Mr. Telles was making this motion as a delayed tactic. And based off of that finding, it was reasonable for the court to deny his Faretto request. Now, in regards to Dr. Kelleher's testimony, the court had multiple bases to exclude her testimony here. And the court, of course, cited rule 12.2, but also rules 702 and 704 for denying the testimony here. Now, in terms of rule 702, I think the reliability of Dr. Kelleher's reports are quite suspect, and the district court found this and reasonably did so. Again, the reports were quite conclusory, and they were essentially based off of rather incomplete analyses, as Dr. Kelleher admitted herself. She said that she wasn't able to complete most of the tests, and that one of the tests that she did complete, the government expert had criticized as being defunct and no longer reliable. The court found, again, that Dr. Kelleher's report was full of conclusory and broad statements with little scientific or factual support. And in fact, some of the conclusions seem pulled from thin air. Now, none of us may be psychiatric experts here, but I would say that the district court and this court here is equipped to evaluate the reliability and the relevance of a psychiatric report. And I think that's precisely what the district court did here, was he assessed everything- Council, what is the standard of review that we apply to the district judge's decision in evaluating Dr. Kelleher's report? Well, your honor, the exclusion, the decision to exclude a report is an abuse of discretion. Factual findings are, of course, normally reviewed for clear error. But here, it is a deferential standard of review. And here, the district court laid out in pretty extensive terms why Dr. Kelleher's testimony was not reliable and should be excluded. And independent of even the Rule 702 basis, the court also cited Rule 704. If you'll see throughout Dr. Kelleher's testimony, she essentially just describes what the defendant told her. She describes generalized characteristics of individuals with autism, and then she jumps to these conclusory statements about either his lack of mens rea or his lack of competence. And I would also say that there's very little academic literature or peer-reviewed studies that she cited to actually support her conclusions here. So I want to turn briefly to the district court's admission of the government's expert. The government's expert here was admitted as a blind expert. So he did not make any specific opinions that were directly relevant. He didn't review any of the case file here. Essentially, he was providing what this court has found to be relevant contextual evidence as far as why victims behave as they do in response to grooming behavior by sexual abusers, and which the government, based off its proffer, demonstrated was relevant in this case. This was a fact where the defendant, or Mr. Tellis, met the minor victim in a rather short period of time in an online game, and made compliments and engaged in what could be characterized as grooming behaviors, and then got to the point where he flew to England, took her from her home, and then sexually abused her over the course of two days. And the victim behaved in ways that may seem counterintuitive, and that she was very cooperative. She went along with him at first. She believed that the defendant loved her, and she tried to protect him at certain periods of time. It was not wholly consistent. The government, in anticipating that this was relevant evidence in the trial, proffered Dr. Turner. And the court agreed that Dr. Turner's testimony was both reliable and relevant. I think the defendant, or the appellant in the reply brief, raised a claim that there was no explicit reliability finding in this case. But in fact, there was an oral ruling that the court made at the very beginning in regard to Dr. Turner's testimony, saying that it was based off of sound scientific methods and sound methodology, and cited the government's very extensive proffer in this case. I'd also like to address the sentencing enhancement under section 4B1.5B1. This enhancement applies, according to the plain text of the enhancement, when the defendant is engaged in a pattern of activity involving prohibited sexual conduct. Now, the application notes of this particular enhancement makes clear that a pattern of activity applies if on or at least two separate occasions, the defendant engaged in prohibited sexual conduct with a minor. It also says that an occasion may be considered without regard to whether the occasion occurred during the course of the incident offense, or if it resulted in a conviction. Now, although this court has not deeply delved into the legislative history behind this enhancement, this has occurred in other cases. For example, the Sixth Circuit has done so in United States versus Britain. That's 539 F 3D 445. And it found that Congress deliberately changed this enhancement in 2003 to ensure that it could apply when the prohibited sexual conduct occurred with the same victim. There's nothing in the language of this enhancement that basically separates occasions in the way that the appellant has suggested. This court also in Ferguson applied this enhancement in a case where the sexual conduct occurred with only one victim. And finally, I would say that the District Court's evidentiary rulings here do not amount to cumulative error. Mr. Tellis has not established really any error in this case, much less non-harmless error. And as this court has found without any error, there simply cannot be a cumulative error. If there are no further questions, the government requests that this court affirm the convictions and settings in this case. Do either of my colleagues have additional questions for Ms. Shea? Very well. Ms. Garpickel, you have a couple of minutes of rebuttal. Thank you, Your Honor. I would like to first address the issue. Judge Smith, Your Honor, stated that my position was that it's obligatory based on the motion. No, it's obligatory based on the substantial evidence. And Medina, Dreyer, these decisions, Medina's a Supreme Court decision, Dreyer's this court's decision, say that a psychiatrist's report is substantial evidence. But counsel, isn't the trial judge the person that determines whether is there substantial evidence? If this court would look at its prior decisions, it'll see that the voluminous, that the material presented is far more substantial than that which this court had found was substantial evidence in other cases requiring the hearing. So again, I apparently misunderstood what you said before. The fact that this came in a motion doesn't mean you have to have a hearing. No. But the trial judge has to determine whether there is substantial evidence. And based upon our case law, we know pretty much what that is. And in this case, if the trial judge determines that it's not there, then there's just no reason to hold a competency hearing, right? It would be error under this court's authority based on what was presented. It would have to be to decide that. No, I get it. Your point that you think there would be error, but the fact is ultimately, it's the trial judge that determines whether there's substantial evidence, right? Correct, Your Honor. Well, for that decision, but this court gets to sit in the position of a reasonable court, and it would be unreasonable for the court to find substantial evidence under these facts. And to not find substantial evidence. Very well. Whether my colleagues have additional questions for Ms. Garfinkel? Am I able to have any rebuttal? You just had it. You just had it. So we thank you very much, both of you for your argument. I know you would like to say lots of additional things, and I'm sure it would be very interesting, but we've given you some extra time. We thank both counsel for your argument in this case. United States versus TELUS is submitted. Thank you.
judges: Schroeder, M. Smith, Vandyke